J-S20016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARK IVORY, | |
| Appellant | No. 651 WDA 2014 |

Appeal from the PCRA Order Entered April 8, 2014
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0000125-2012

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                                    **FILED MAY 7, 2015**

Appellant, Mark Ivory, appeals from the order denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

On February 21, 2012, Appellant was charged with possession of a controlled substance with intent to deliver ("PWID"), possession of a controlled substance, and criminal conspiracy.  On May 2, 2012, a jury found Appellant guilty of all charges, and on August 17, 2012, the trial court imposed an aggregate sentence of four to fifteen years of incarceration. Appellant filed a timely post-sentence motion seeking modification of his sentence.  The trial court denied Appellant's motion on September 11, 2012, and October 5, 2012, Appellant filed a timely notice of appeal.  On April 1, 2013, this Court affirmed Appellant's judgment of sentence.

*Commonwealth v. Ivory*, 1555 WDA 2012, 75 A.3d 540 (Pa. Super. filed April 1, 2013) (unpublished memorandum).

On July 22, 2013, Appellant filed a timely PCRA petition. The PCRA court appointed counsel, and on November 9, 2013 and December 12, 2013, the PCRA court held hearings on Appellant's petition. In an order filed on April 8, 2014, the PCRA court denied Appellant's petition. This timely appeal followed.

On appeal, Appellant raises the following issue for this Court's consideration:

> I.    Whether the PCRA Court erred in not finding Trial Counsel to have been ineffective for eliciting otherwise inadmissible evidence of [Appellant's] criminal history/pending charges, and for failing to request [a] cautionary instruction from the Trial Court.

Appellant's Brief at 2.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011) (citing *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id*. (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. *Commonwealth v. Pierce*, 527 A.2d 973, 975-976 (Pa. 1987). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012). An allegation of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. *Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004). Thus, when it is clear that an appellant has failed to meet the prejudice prong of an assertion of ineffective assistance of counsel, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Baker*, 880 A.2d 654, 656 (Pa. Super. 2005). "The burden of proving ineffectiveness rests with Appellant." *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007).

Appellant contends that counsel was ineffective at trial for eliciting testimony that referenced his criminal history. Appellant's Brief at 3.

Specifically, Appellant refers to trial counsel's cross-examination of Commonwealth witness Detective Kevin Price:

[Appellant's Counsel] Q: Do you have those papers of [Appellant's]?

A: I called my office to see if you picked them up and they were up? [sic] You haven't picked them up, they are sitting in my office ….

Q: Do you have an inventory of what those papers are, did you make one?

A: I know what they are, yes.

Q: Did you write an inventory of what they were that you were giving to me, did you have one available?

A: No. We had personal papers, and I believe we might have put what the papers were. I didn't go through those papers, I didn't like analyze those. I didn't want to analyze them. I didn't want to look at them.

Q: What indication did you have to believe they belonged to [Appellant]?

A: His name was on them, several of them.

Q: They will be available this afternoon?

A: If you want to put it in evidence, that's fine like I said, there was a reason why I didn't go through the papers, I didn't want to. I didn't feel it was proper for me to do that.

N.T., 5/1/12, at 92-93. The cross-examination continued as follows:

Q: I understand. This bag of these personal papers and the items that you described that the box with the wax bags were in, how was it found in the crib or the play pen?

A: It was found folded down, the actual crib/play pen was folded down on the ground and it was sitting sort of in the middle of it and the bag, the bag was there.

Q: When you looked, you could see?

A: I opened up the bag, I believe, I opened up the bag, and I immediately saw these personal papers, so I was a little le[e]ry.

Q: Kind of digging through with your eyes closed?

A: Not my eyes closed, no, I tried not to look at the contents of what was written on the papers because again, I felt that it was not proper for me to do that.

Q: Not really the focus of your search basically as well?

A: It wasn't proper. I didn't, I saw these papers and I am thinking I don't think I should look at these. That's what I thought. I moved these papers aside and they were the items and I took whatever items that I could put the personal papers back in, and I believe closed up the bag a little bit and we took the bag.

Q: I have a copy of your inventory with regard to that contents search and seized property, and there is some notation in the right-hand side, AB, VA, these would be initials of the other agents that were with you?

A: That's who found or again seized the property or what not, but again, I was there during the search and the items being found. I didn't claim the bag that we found, I don't know who would have claimed the bag as far as finding it.

Q: I was just looking through this inventory, sorry, I saw KP on it?

**A: I am the one that filled it out, but when we found that bag, Mr. Kasaback, and God, I don't know what I can say or what I am allowed to say.**

Q: I am just trying to get this clear.

A: We treated that bag like very private because we didn't want to be accused of things and those papers, we were very careful with them. We didn't want to go through those. We didn't want to be accused of going through them.

Q: I guess the inference here is if these items are found and you are saying they are consistent with the packaging of heroin and his personal papers are found in that bag, I guess why would they be turned over and not kept as part of evidence in this case by showing there was an inference from his property and these

other items, which would be the inference of his property as well?

A: Are you talking about why I was turning the papers over?

Q: Yes.

A: You requested that property be turned over, they were court papers. They were court documents, they were criminal charges, they were everything that as far as his cases go, his personal notes as far as how he was going to defend his cases. That's what was there.

Q: Do you know whether those items were cataloged or inventoried?

A: I did not go through those items, I know what. I saw what was were [sic], we handled them very carefully. You were to pick them up, you never came and picked them up. On three different times, I also have an e-mail from the prison that [Appellant] was requesting those papers because they were his court documents. **Those were his criminal charges that he has, he's facing, okay.** And I responded that he was to get ahold of you, I spoke to you to come get them. We have them, they are on the way down. I will be more than happy to turn them over. If you would like me to document them and go through the steps and read them, and I will do that.

Q: I just wondered why that wasn't done?

A: I was not getting into the defense of his criminal charges that he's facing because I don't want to be accused of tampering with the case or interfering in how attorney-client privilege type thing. That's his personal stuff. I want nothing to do with how he defends any criminal case. I don't want any part in that. I don't want to know.

Q: I understand.

*Id*. at 97-100 (emphasis added).

Following this exchange, Appellant's trial counsel asked to approach the bench for a sidebar conference, and the following exchanged occurred:

[Appellant's Trial Counsel]: I am going to move for a mistrial. Maybe we don't want to do it right here.

The Court: Right here.

[Appellant's Trial Counsel]: Now, he has given the inference there are prior criminal charges. Maybe you can, I didn't ask about the personal papers, I don't think it was necessary to talk about defenses and further charges. It is basically telling the jury he has had prior charges at the time he found these, there were not charges filed in that case.

[Assistant District Attorney]: Our position would be the detective's testimony made it clear the papers seemed to do with charges with respect to this case, no other cases. I don't --

[Appellant's Trial Counsel]: He did not say that.

[Assistant District Attorney]: I don't think that point, I don't think there was a reference or an inference there were other cases pending, is my recollection of the testimony.

[Appellant's Trial Counsel]: First, he didn't know what they were, and he gets on the stand and of everything that was in that bag, he said there were criminal charges in that bag, which is what he found. There are no charges [pending] at that time on this case, prior ones. The jury knows he has prior charges, prior defenses, prior cases.

The Court: I am going to say to you, Detective Price went out of his way to try not to answer that question which, quite frankly, is uncharacteristic of him. He went above and beyond not to get into that area. You asked the question and you asked the same question once too often and so, he threw in the towel.

[Appellant's Trial Counsel]: I didn't ask what the contents were.

The Court: The motion is denied.

[Appellant's Trial Counsel]: I just asked about whether they were inventoried.

The Court: The motion is denied.

[Appellant's Trial Counsel]: Okay.

*Id*. at 100-102.

We will not speculate as to what counsel hoped to achieve with this line of questioning. Our focus is the three-pronged test set forth in **Pierce**, and we conclude that Appellant has failed to establish the prejudice prong.

As set forth above, in order to establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. **Reed**, 42 A.3d at 319. Here, while Detective Price undoubtedly referred to court and arrest papers containing Appellant's name, Appellant, himself, testified to these same facts. The PCRA court explained as follows:

> Here, [Appellant] has failed to establish that there is a reasonable probability that the verdict would have been different absent Price's testimony. [Appellant] himself put the issue of other criminal charges and his criminal record before the jury through his own testimony. In his testimony [Appellant] stated **"at this time, I had come from, I was locked up, and I was, they sent me to the halfway house in Johnstown."** N.T. 5/12/2012 p. 6, 32. [Appellant] further admitted to participating in a drug conspiracy relative to marijuana. Id. at 81. Even absent Price's testimony the jury would have learned about other charges from [Appellant] himself.

PCRA Court Opinion, 4/8/14, at 6 (emphasis added). Thus, we cannot conclude that the outcome of Appellant's trial would have been any different. Appellant, in his own testimony, raised the issue of his incarceration and criminal involvement in drug activity.

Furthermore, we conclude that even if Detective Price had never mentioned Appellant's court papers, the outcome of Appellant's trial would have been the same. The evidence admitted at trial overwhelmingly

supported Appellant's conviction. Dale Blough, the father of Appellant's girlfriend, testified that Appellant was involved in packaging and selling heroin. N.T., 5/1/12, at 46. Kayla Younkers, Appellant's girlfriend, testified that while Appellant lived in her house, he was packaging and selling heroin with another individual named Joseph Quinn. *Id*. at 108. Ms. Younkers testified that detectives came to her house, and she gave consent to search her house. *Id*. at 110. During the search, the detectives found heroin. *Id*. at 110, 151. Additionally, Appellant's co-conspirator, Joseph Quinn, testified that he transported heroin for Appellant. *Id*. at 170. Mr. Quinn also testified that he and Appellant packaged the heroin together for sale. *Id*. at 171, 179. Therefore, even if the challenged testimony had not been presented, we cannot conclude that there is any probability the outcome of the proceedings would have been different.

For the reasons set forth above, Appellant is entitled to no relief. Accordingly, we affirm the April 8, 2014 order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/7/2015</u>